**Margery WAKEFIELD, Plaintiff,**

**v.**

**The CHURCH OF SCIENTOLOGY OF CALIFORNIA, Defendant–Appellee,**

**Times Publishing Company and Tribune Company, Appellants.**

**No. 89–3796.**

United States Court of Appeals, Eleventh Circuit.

Aug. 12, 1991.

Patricia F. Anderson, St. Petersburg, Fla., for appellants.

Michael Lee Hertzberg, New York City, for defendant-appellee.

Before HATCHETT and COX Circuit Judges, and HENDERSON, Senior Circuit Judge.

HATCHETT, Circuit Judge:

We dismiss this case, which at one time touched upon important first amendment issues, because the case has been rendered moot.

## FACTS

Margery Wakefield and three other plaintiffs alleged that the Church of Scientology of California (the Church) committed various wrongful acts against them. On August 14, 1986, Wakefield, the other plaintiffs, and the Church entered into a settlement agreement which included provisions enjoining Wakefield and the other plaintiffs from discussing, with other than immediate family members, (1) the substance of their complaints against the Church, (2) the substance of their claims against the Church, (3) alleged wrongs the Church committed, and (4) the contents of documents returned to the Church. The district court approved the settlement agreement, sealed the court files, and dismissed the case with prejudice. The dismissal order specifically gave the court jurisdiction to enforce the settlement terms. Nonetheless, Wakefield publicly violated the settlement agreement's confidentiality provisions.

In 1987, both the Church and Wakefield filed motions to enforce the settlement agreement. The district court requested that a magistrate judge address whether either party had violated the settlement agreement. On September 9, 1988, the magistrate judge issued a report and recommendation which concluded that Wakefield had violated the settlement agreement, and the Church had fully complied with the agreement's terms and conditions. On November 3, 1988, the Times Publishing Company (the Times), which publishes the *St. Petersburg Times,* moved to intervene in this lawsuit, to unseal the court files, and to gain access to any contempt hearings. In its motions, the Times alleged that the sealed court records and closed proceedings violated its and the public's constitutional and common law rights of access to judicial proceedings and records. In opposing the motions, the Church argued that they were untimely and barred by laches. On May 16, 1989, the district court adopted the magistrate judge's report, issued a preliminary and permanent injunction against Wakefield, and referred the Times's motion to intervene to the magistrate judge.

Notwithstanding the court's injunction, Wakefield continued to publicize the lawsuit. Thus, on July 18, 1989, the Church sought orders to show cause why Wakefield should not be held in civil and criminal contempt. The Church also sought damages, costs, and attorney's fees. To support its requests, the Church submitted excerpts of newspaper, television, and radio interviews attributed to Wakefield.

On August 15, 1989, the magistrate judge submitted a report and recommendation addressing Times's motion to intervene. He recommended that absent a compelling reason, all future proceedings and the court files, except for documents pertaining to the settlement, should be open and that Times be allowed to intervene. Due to events discussed later in this opinion, the district court has not issued a final order on these issues.

The district court scheduled an evidentiary hearing to address the Church's contempt motion. As witnesses at the hearing, the Church subpoenaed reporters for the *St. Petersburg Times* and the *Tampa Tribune.* Consequently, the Times, and the Tribune Company, which publishes the *Tampa Tribune* (the newspapers), filed motions for access to hearings, pleadings, proceedings, and records related to the contempt hearings in order to determine if

their reporters' qualified privilege prevented them from being compelled to testify.

## PROCEDURAL HISTORY

On September 11, 1989, the district court held an *in camera* proceeding to rule on the newspapers' motions. The district court denied the newspapers' motions for access to the hearings because the Church subpoenaed the reporters only to establish the source and accuracy of the statements attributed to Wakefield. The district court also held that the reporters waived any privilege by publicly attributing the statements to Wakefield.

In considering the newspapers' motions, the district court stated, "due to the plaintiff's complete and utter disregard of prior orders of this court, the court concludes that any restriction short of complete closure would be ineffective." It further held that "[p]ublicity of a private crusade has become her end, not the fair adjudication of the parties' dispute. In doing so, plaintiff is stealing the court's resources from other meritorious cases." Thus, the district court closed the contempt proceedings to the public and the press referring further proceedings to a United States Magistrate Judge. The magistrate judge began contempt hearings on September 11, 1989.

On September 18, 1989, the newspapers filed a Notice of Appeal, a Motion for Expedited Appeal, and a Motion for Stay Pending Appeal. On September 29, 1989, this court granted expedited appeal, but denied the newspapers' emergency motion for a stay of the contempt proceedings pending resolution of the expedited appeal.

On appeal, the newspapers argued that the closure violated their first amendment and common law rights of access to judicial proceedings. They contended that the public's right of access outweighs the rationale for keeping the settlement agreement confidential. The Church contended that Wakefield's "open and defiant contumacious conduct" mandated closure and that the newspapers did not enjoy an absolute constitutional or common law right of access to civil proceedings.

During our first oral argument, we learned that the newspapers had never requested the district court to allow access to the contempt hearing transcripts. Since the hearings had been completed before oral argument, we issued a November 17, 1989, order which temporarily remanded the case to the district court for the limited purpose of allowing the newspapers to seek access to the contempt hearing transcripts. The order further instructed the district court to rule on such a request "within a reasonable time."

On June 25, 1990, eight months after the last contempt hearing, the magistrate judge submitted a report and recommendation which concluded that Wakefield had willfully violated the court's injunction. He further held that while a civil contempt finding could be appropriate, he suggested the case be referred to the United States Attorney's office for prosecution on the criminal contempt charges. The district court has not issued a final order addressing whether Wakefield is in civil or criminal contempt.

Furthermore, almost a year after our temporary remand, the district court had not ruled on the newspapers' requests for access to the contempt hearing transcripts. Thus, the newspapers filed a motion requesting that this court clarify the "reasonable time" language in the November 17, 1989, order. In order to speed finalization of this matter, this court denied the clarification motion, but issued an order stating, "[a]fter December 3, 1990, this court will entertain a request for relief addressing the delay that has occurred since our remand to the district court provided that relief has been sought." After this clear signal for action, the district court issued a November 21, 1990, order unsealing the civil contempt proceeding transcripts, except for those portions which disclosed the settlement agreement terms.

On March 21, 1991, the newspapers filed a motion requesting a second oral argument, which the Church opposed. On April 18, 1991, we granted the newspapers' motions for a second oral argument, instructing the parties to address (1) whether the

case was moot, (2) whether a case or controversy remained, and (3) whether a reasonable possibility of settlement existed.

## ISSUE

The sole issue we discuss is whether this case is moot.

## CONTENTIONS

The newspapers argue that this case is not moot because the court can grant relief which will affect the parties by ordering release of all the judicial documents relating to the contempt hearing and the unreleased transcript pages.

The Church contends that this case is moot and does not present a case or controversy which this court may address. It emphasizes that the newspapers initially sought access to the proceedings to represent their reporters, then under subpoena. It argues that this aspect of the case is absolutely moot because the Church released the reporters from their subpoenas.

## DISCUSSION

▮ This case, at its beginning, presented an interesting and important issue: under what circumstances may civil judicial proceedings be closed to the public and the press? Unfortunately, the newspapers did not prevail in their efforts to halt the proceedings; this court denied their motions to stay the proceedings pending the expedited appeal. The newspapers argue that we should address whether a constitutional right of access to civil proceedings exists. To do so, however, would constitute an advisory opinion. The hearing that is the subject of this case terminated almost two years ago. Although the newspapers have an interest in the constitutional question, perhaps for future cases, no "live" case or controversy remains in this case. The hearings have been completed, and the newspapers have been given the hearing transcripts.[1]

▮ When addressing mootness, we determine whether judicial activity remains necessary. *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 n. 10 (1975). "A case becomes moot, and therefore, nonjusticiable, as involving a case or controversy, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *B & B Chemical Co. v. United States E.P.A.*, 806 F.2d 987, 989 (11th Cir.1986) (quoting *United States v. Geraghty*, 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)).

▮ Three exceptions to the mootness doctrine exist: (1) the issues are capable of repetition, yet evading review; (2) an appellant has taken all steps necessary to perfect the appeal and to preserve the status quo; and (3) the trial court's order will have possible collateral legal consequences. *B & B Chemical Co.*, 806 F.2d at 990.

The newspapers argue that this case falls within the "capable of repetition yet evading review" mootness exception. They argue that a case is not moot if this court can grant relief that affects the interested parties. *Airline Pilots Association v. U.A.L. Corp.*, 897 F.2d 1394 (7th Cir.1990); *Wilson v. U.S. Department of Interior*, 799 F.2d 591 (9th Cir.1986). Thus, they assert that we should order the release of all the judicial documents related to the contempt hearing and the unreleased transcript pages. In their view, these documents are essential so that the public can understand what happened to Wakefield.

---

1. It is also noteworthy that the newspapers have changed their claims as the case has progressed. They first sought access on constitutional and common law grounds, then they sought access to protect their reporters from compelled testimony. Finally, with full knowledge that the hearings had been completed, the newspapers never sought the hearing transcripts until prompted to do so by this court. Now, with all but eleven pages of the hearing transcript, the newspapers seek the eleven pages on constitutional and common law grounds. Many of the theories presented to this court were never presented to the district court. Parties may make alternative claims, may change claims, may sometimes file inconsistent claims, but parties may not do so in the appellate court. This court reviews the case tried in the district court; it does not try ever-changing theories parties fashion during the appellate process.

The newspapers do not meet the exceptions' two conditions in order for the capable of repetition, yet evading review exception to apply: (1) the challenged action must be of too short a duration to be fully litigated prior to its cessation, and (2) a reasonable expectation must exist that the same complaining party will be subject to the same action again. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

As an example of the action's short duration, the newspapers assert that they acted promptly by filing during the contempt proceeding's adjournment a motion for a stay pending the appeal of the district court's closure. The record refutes this assertion. The underlying case has been in the federal court system since November 29, 1982. Even prior to the 1986 closure, the Times reported on the Wakefield case, but not until 1988, did Times seek to intervene. Additionally, the newspapers did not appeal the closure order until the contempt hearing had been adjourned for a continuance. These facts refute the newspapers' assertions of the action's short duration.

Likewise, the newspapers cannot satisfy the second condition. In addressing the second condition, the newspapers argue that if this court does not offer judicial guidance, a "reasonable expectation" exists that this controversy will occur again. They specifically state that they "continue to expect and suspect that secret church proceedings are being or will be held," and suspect that the Church will bring contempt proceedings against the other plaintiffs. The record does not support these suspicions.

This case involves unique circumstances which are not easily repeated. Wakefield's constant disregard and misuse of the judicial process mandated partial closure. Since Wakefield's contempt hearing concluded, the Church has not instituted nor has the district court conducted any additional contempt hearings, show cause hearings, or *in camera* proceedings. Furthermore, nothing indicates that the Church contemplates these actions. Although the newspapers' suspicions that secret church and contempt proceedings will occur constitute a theoretical possibility, a mere hypothesis or theoretical possibility is insufficient to satisfy the test stated in *Weinstein*. *Morgan v. Roberts*, 702 F.2d 945, 947 (11th Cir.1983). Thus, no "reasonable expectation" exists that this controversy will occur again.[2]

The newspapers' interest in the important constitutional issue which was once alive in this case is understandable. Nevertheless, we must wait for another case with a current controversy, and with a well-developed record to address the issue. The fact that much of the delay in this case is attributable to a busy and overburdened federal district court is unfortunate.

Because the newspapers cannot satisfy the capable of repetition, yet evading review requirements, this case is moot. Accordingly, this case is dismissed.[3]

DISMISSED.

---

**2.** As earlier noted, the hearings were not halted because the newspapers did not prevail on their motions for stay pending appeal. We must assume that in the proper cases stays will be granted.

**3.** We express no opinion on whether the remaining eleven pages of the transcripts may properly be sought in another federal lawsuit.