**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John VALENTI and Charles
Corces, Defendants,**

**Times Publishing Company,
Intervenor–Appellant.**

**In re TIMES PUBLISHING
COMPANY, Petitioner.**

**Nos. 92–3125, 92–3128.**

United States Court of Appeals,
Eleventh Circuit.

March 17, 1993.

George K. Rahdert, Rahdert & Anderson, St. Petersburg, FL, for intervenor-appellant.

Vicki Johnson, Asst. U.S. Atty., Tampa, FL, for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges, and DYER, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this appeal involving important First Amendment issues, we survey the law regarding the closure of criminal proceedings, and hold unconstitutional the Middle District of Florida's sealed docket in criminal cases.

## BACKGROUND

On January 29, 1992, a grand jury indicted a Tampa, Florida criminal defense lawyer, Charles Corces, and an assistant state attorney, John Valenti, on charges of conspiracy, extortion, and bribery. The charges related to a previous state indictment for Corces's alleged bribery of Valenti in order to gain favorable treatment for criminal defendants in pending state prosecutions. Following the federal indictment, the state dismissed its indictment against Corces and Valenti.

Several months before trial, closed proceedings took place in the district court, including: (1) a February 14, 1992 partially *ex parte*, closed bench conference between the prosecutor and the district court, which resulted in a postponement of the trial date to May, 1992; (2) the government's March 18, 1992 *ex parte, in camera* motion; (3) the government's April 22, 1992, *ex parte, in camera* motion requesting a second continuance of the trial; (4) an August 13, 1992 closed conference between the prosecutor, defense counsel, and Corces before a United States Magistrate Judge; (5) the government's October 16, 1992 *in camera* motion; (6) an October 19, 1992 closed bench conference in open court, between

the prosecutor, Corces, and defense counsel; (7) an October 19, 1992 *ex parte*, closed bench conferences with the government; (8) an October 19, 1992 closed bench conference with the prosecutor, Corces, and defense counsel where the government disclosed the contents of the earlier *ex parte* discussions; (9) an October 21, 1992 closed bench conference with the prosecutor, Corces and his counsel; (10) an October 21, 1992 closed bench conference where Corces filed under seal certain exhibits, which he had received *in camera* from the government; (11) an October 22, 1992 *in camera* proceeding where the district court heard testimony of an Assistant United States Attorney; (12) an October 22, 1992 *ex parte*, closed bench conference with the prosecutor; and (13) an October 15, 1992 *in camera* motion that the government filed seeking protection of discovery materials.

On October 20, 1992, a *St. Petersburg Times* (*Times*) news reporter delivered a letter to the district court requesting transcripts of the October 19, 1992 proceedings be made available to the public, and requesting that all further proceedings be held in open court. On October 21, 1992, the district court returned the reporter's letter with a note from the clerk of the court directing the reporter to file a formal motion on these requests. On October 23, 1992, the *Times* filed an Emergency Motion to Intervene and Unseal Court Records and Request for Expedited Hearing ("emergency motion"). On October 26, 1992, the *Times* filed its Amended Emergency Motion, claiming that the district court had stymied its efforts to obtain accurate and timely information about the public corruption prosecution in violation of the Constitution and the common law.

On October 29, 1992, the district court granted the portion of *Times*'s emergency motion seeking to intervene for the limited purpose of seeking to unseal the disputed court records. The district court also filed *in camera* certified questions to this court. On November 3, 1992, this court notified the district court that it would transfer the filing to the miscellaneous docket without further action because the law provides no basis for a response to the filing.

On November 6, 1992, the district court denied that portion of the *Times*'s emergency motion seeking to unseal court records. The district court also directed the clerk of the United States District Court for the Middle District of Florida ("Middle District") to annotate any further closed proceedings in this case on the Middle District's public docket, rather than the usual annotations made only on the sealed docket.

## ISSUES AND CONTENTIONS

The *Times* contends that the district court erred in conducting closed proceedings without first providing the public and press notice and opportunity to be heard, and articulating specific findings that justified closure of portions of the underlying criminal proceeding. The *Times* also contends that the district court erred in denying its emergency motion to unseal transcripts of previously held closed proceedings and several *in camera* documents. Additionally, the *Times* petitions this court to issue a writ of mandamus, ordering the Middle District not to continue using both a public and a sealed docket in criminal proceedings. The government agrees that this case is not moot merely because the underlying trial has concluded in a mistrial. The government contends, however, that this court has no jurisdiction to review the use of a dual-docketing system in the Middle District because the district court has already fashioned a remedy in this case. In addition, the government contends that the district court did not abuse its traditional discretion to conduct closed bench conferences and properly denied the *Times*'s emergency motion to unseal the disputed transcripts and *in camera* documents. We address these contentions separately.

## APPELLATE JURISDICTION

■ We first note the *Times*'s standing to intervene for purposes of challenging its denial of access to the underlying litigation, even though it is otherwise not a party. *See In re Petition of Tribune Co. v. United States*, 784 F.2d 1518, 1521 (11th Cir.

1986); *Newman v. Graddick*, 696 F.2d 796, 799–800 (11th Cir.1983). "An order denying access is not only reviewable by this court but is immediately reviewable regardless of the pendency of the underlying action." *In re Petition of Tribune*, 784 F.2d at 1521; *see Newman*, 696 F.2d at 800 (recognizing that orders denying press access and ongoing litigation are appealable under the collateral order doctrine). Although the *Times*'s standing to seek immediate review is not contested, the parties disagree about the applicability of the mootness doctrine and its exceptions to this case.

■ The *Times* argues that this is a model case of the kind of constitutional wrong that is capable of repetition yet evading review. The government concedes that this case is not moot merely because the underlying prosecution has come to a conclusion, but argues that the "capable of repetition, yet evading review" exception to the mootness doctrine is inapplicable because the case is not yet moot. Rather, the government argues that the controversy in this case remains alive since the requested records remain sealed.

The *Times* requests relief broader in scope than merely unsealing the transcripts of closed proceedings in this case. The *Times* also challenges the procedures for closure followed in the district court, and requests this court to strike the Middle District's dual-docketing system. Thus, the district court's November 6, 1992 order does moot that portion of this case relating to the district court's procedures for closure and its maintenance of a dual-docketing system. The district court directed the clerk to annotate any future closed proceedings on the public docket "in this particular case." The district court's order makes it clear that the instructions for complete public docketing apply only to this case.

Because this case presents a controversy capable of repetition yet evading review, we hold that mootness does not bar our review of the *Times*'s claims against the dual-docketing system. *See Newman*, 696 F.2d at 800 (holding that mootness is not

bar to review of a district court's order denying a newspaper access to judicial records and hearing, based in part on the district court's plans to maintain its policy of occasionally excluding the public and the press). Accordingly, we have jurisdiction to consider the merits of the *Times*'s claims relating to closure procedures, the maintenance of the dual-docketing system, and the motion to unseal the closed proceedings in this case.

## DISCUSSION

Prerequisites for Closure of Judicial Proceedings

■ The public and the press have a qualified constitutional right to attend criminal trials. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07, 102 S.Ct. 2613, 2620, 73 L.Ed.2d 248 (1982). The Supreme Court has emphasized the following two considerations for determining whether a First Amendment right of access attaches to a particular process within a criminal proceeding: (1) "whether the place and process have historically been open to the press and general public"; and (2) "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 8–9, 106 S.Ct. 2735, 2740, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*) (holding that the right of public access attaches to preliminary hearings based on these considerations); *see also Press Enterprise Co. v. Superior Court of California for Riverside County*, 464 U.S. 501, 509, 104 S.Ct. 819, 823–24, 78 L.Ed.2d 629 (1984) (*Press–Enterprise I*) (holding that the right of public access attaches to the selection of jurors based on these considerations). "But even when a right of access attaches, it is not absolute." *Press–Enterprise II*, 478 U.S. at 9, 106 S.Ct. at 2740–41; *see also Press Enterprise I*, 464 U.S. at 509, 104 S.Ct. at 823–24 (recognizing that "closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness").

Thus, in determining whether to close a historically open process where public access plays a significant role, a court may restrict the right of the public and the press to criminal proceedings only after (1) notice and an opportunity to be heard on a proposed closure; and (2) articulated specific "findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press–Enterprise I*, 464 U.S. at 510, 104 S.Ct. at 824 (stating that the lower court must articulate "findings specific enough that a reviewing court can determine whether the closure order was properly entered"); *see Newman*, 696 F.2d at 802; *see also Globe Newspaper Co.*, 457 U.S. at 609 n. 25, 102 S.Ct. at 2620 n. 25 (recognizing that representatives of the press and the general public " 'must be given an opportunity to be heard on the question of their exclusion' "); *Gannett Co. v. De Pasquale*, 443 U.S. 368, 401, 99 S.Ct. 2898, 2916, 61 L.Ed.2d 608 (1979) (Powell, J., concurring) (same). The opportunity for the press and the public to be heard on the question of their exclusion "extends no farther than the persons actually present at the time the motion for closure is made, for the alternative would require substantial delays in trial and pretrial proceedings while notice was given to the public." *See Gannett*, 443 U.S. at 401, 99 S.Ct. at 2916.

(i) Closed Bench Conferences

The *Times* argues that the district court completely ignored the *Press–Enterprise I* and *Newman* procedural requirements before conducting closed bench conferences. The government responds that the district court properly exercised its traditional authority to conduct closed bench conferences, especially where closure protects sensitive information concerning an ongoing criminal investigation. The government also argues that the district court's subsequent hearing and order on the *Times*'s emergency motion was adequate to satisfy the principles articulated in *Press–Enterprise I* and *Newman*.

Contrary to the *Times*'s argument, we do not interpret *Press–Enter-*prise I* to require a trial court to articulate findings that a closed bench conference is necessary and narrowly tailored to preserve higher values *before* a closed bench conference occurs. Instead, *Press–Enterprise* notes that a court may conduct an *in camera* conference on the record where the "constitutional value sought to be protected by holding open proceedings may be satisfied later by making a transcript of the closed proceedings available within a reasonable time." *Press–Enterprise I*, 464 U.S. at 512, 104 S.Ct. at 825. In this process, the trial court balances the right of access against the interest in maintaining a sealed transcript. *Press–Enterprise I*, 464 U.S. at 512, 104 S.Ct. at 825. In placing a duty on the trial court to balance competing interests and make findings *after* the occurrence of a closed bench conference, the Court in *Press–Enterprise I* articulated a workable procedure to accommodate the public's right of access and the long recognized authority of a trial court to conduct bench conferences outside of public hearing. *See Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n. 25, 102 S.Ct. 2613, 2620 n. 25, 73 L.Ed.2d 248 (1982) (holding that a trial court has traditional authority to conduct *in camera* conferences); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n. 23, 100 S.Ct. 2814, 2839 n. 23, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring) (stating that "the presumption of public trials is, of course, not at all incompatible with reasonable restrictions imposed upon courtroom behavior in the interest of decorum," including the exclusion of the public and the press from conferences at the bench and in chambers where such conferences are distinct from trial proceedings); *United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir.1977) (holding that "bench conferences between judge and counsel outside of public hearing are an established practice, ... and protection of their privacy is generally within the court's discretion.... Such conferences are an integral part of the internal management of a trial, and screening them from access by the press is well within a trial judge's broad discretion"), *cert. denied, Miami Herald Publishing Co. v. Krentz-*

*man,* 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), *overruled in part on other grounds, Nixon v. Warner Communications,* 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Thus, we find no error in the district court's exercise of its traditional authority to conduct closed bench conferences. Our holding on this issue is bolstered in this case because the district court afforded the *Times* an opportunity to be heard on the release of the transcripts within a reasonable time.[1]

(ii) Sealed Transcripts and *In Camera* Motions

 Even where a court properly denies the public and the press access to portions of a criminal trial, the transcripts of properly closed proceedings must be released when the danger of prejudice has passed. *See Gannett,* 443 U.S. at 393, 400, 99 S.Ct. at 2912, 2916. Thus, we review the district court's November 6, 1992 order denying the *Time's* emergency motion to unseal under the standards established in *Press–Enterprise I. See United States v. Brooklier,* 685 F.2d 1162, 1172 (9th Cir. 1982) (holding that the denial of a motion to release transcripts of closed proceedings must itself satisfy the requirements for a denial of a right of access protected under the First Amendment). Accordingly, the district court's denial of the motion to unseal must be supported with a finding that the denial of access is necessary to preserve higher values, and is narrowly tailored to serve that interest. *See Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824.

In its November 6, 1992 order, the district court identified the substantial probability of irreparable damage to a continuing law enforcement investigation as the compelling interest requiring a denial of the *Times*'s motion for access to the *in camera* motions and the transcripts of the closed proceedings. The district court also ruled that "the alternative to closure will not adequately protect that interest and that there is a substantial probability that closure will be effective in protecting against the harm feared by the moving party." The *Times* argues that the district court's ruling is inadequate under the standards in *Press–Enterprise I* because protection of an ongoing law enforcement investigation is not a recognized compelling interest.[2] The *Times* also argues that the district court erred in failing to identify the alternatives to closure that it considered and rejected.[3]

 Based on our review of the sealed motions and transcripts, we hold that the district court properly denied the *Times*'s emergency motion to unseal as a necessary means to achieving the government's compelling interest in the protection of a continuing law enforcement investigation. *See In re Petition of the Tribune,* 784 F.2d at 1522–23 (holding that a district court properly denied access to "bench conference transcripts based on the government's compelling interest in the protection of an ongoing collateral law enforcement investigation).

 In addition, we hold that the district court did not err in failing to specify which alternatives it considered before con-

---

1. Our holding also provides a workable method and a common sense solution to the closure problem. After all, a trial judge cannot rule intelligently until some information has been disclosed.

2. We find the *Times*'s argument that the district court erred in relying on 18 U.S.C. § 3153(c)(1) to find a compelling and legitimate interest in sustaining a seal on the closed proceeding before the magistrate judge, to be completely without merit and warrants no discussion. *See* 18 U.S.C. § 3153(c)(1) & (2) (1985).

3. In addition, the *Times* argues that the district court's order is not narrowly tailored based on the absence of a ruling on how long the tran-

scripts and *in camera* motions must remain sealed. This issue is not properly before this court because, as the *Times* concedes, the district court's November 6, 1992 order is silent on the time length of the seal. It would be premature for this court to consider a claim that the district court erred in permanently sealing the disputed motions and transcripts in the absence of such a ruling from the district court. Based on the November 6, 1992 order, the *Times* is not precluded from making a subsequent motion to unseal or a motion to amend due to changed circumstances in the ongoing law enforcement investigation.

cluding that closure was necessary to protect the government's compelling interest. We note that the *Times* failed to suggest a logical and workable alternative for the district court's consideration, and also failed to suggest a workable alternative for this court's consideration in its brief or at oral argument. *See Gannett*, 443 U.S. at 401, 99 S.Ct. at 2916 (recognizing that those who object to closure have the responsibility of showing that reasonable alternatives are available to adequately protect the interest being considered). The only apparent alternative available to the district court in this case was the release of a redacted version of the sealed transcripts. We find, however, that the release of a redacted version of the transcripts would have been inadequate to protect the government's interest in the ongoing investigation at the time of the November 6, 1992 hearing. Accordingly, we find no error in the district court's failure to state specifically that it considered and rejected the alternative of releasing a redacted version of the transcripts, especially in light of the *Times*'s failure to offer any alternative other than unsealing the disputed transcripts.

### (iii) Sealed Docket

██ The *Times* argues that the Middle District's maintenance of the dual-docketing system denied it any meaningful opportunity to be heard on its exclusion from closed pretrial proceedings. The government responds that this court should avoid binding the district court to any formal procedure that is unduly burdensome. Although this court in *Newman* decided not to bind the district courts to the formality of any set procedure for closure, the *Newman* court did hold that "the issue [of closure] must be squarely confronted and those with various interest must be given the opportunity to be heard." *Newman*, 696 F.2d at 802. The Middle District's maintenance of a public and a sealed docket is inconsistent with affording the various interests of the public and the press meaningful access to criminal proceedings. *See*

*CBS, Inc. v. District Court*, 765 F.2d 823, 826 (9th Cir.1985) (noting that "a two-tier system, open and closed" erodes public confidence in the accuracy of records, and thus denies the public and press its right to meaningful access).

In this case, the sealed docket completely hid from public view the occurrence of closed pretrial bench conferences and the filing of *in camera* pretrial motions. These events remained hidden until a *Times* reporter happened to be present to observe a closed bench conference. The Middle District's dual-docketing system can effectively preclude the public and the press from seeking to exercise their constitutional right of access to the transcripts of closed bench conferences. Thus, we hold that the Middle District's maintenance of a dual-docketing system is an unconstitutional infringement on the public and press's qualified right of access to criminal proceedings.

### CONCLUSION

We find no error in the district court's exercise of its traditional authority to conduct closed bench conferences, where the court later allowed the press an opportunity to be heard on the release of the transcripts to the closed proceedings within a reasonable time. *See Press–Enterprise I*, 464 U.S. at 512, 104 S.Ct. at 825. Based on the district court's findings and our review of the sealed transcripts, we affirm the district court's November 6, 1992 order denying the *Times*'s emergency motion to unseal the transcripts of the closed bench conferences and *in camera* motions. We also hold that the Middle District's use of a public and a sealed docket to note criminal proceedings is an unconstitutional infringement on the right of the public and press to seek the release of *in camera* motions and transcripts of closed bench conferences.[4]

AFFIRMED.

---

**4.** Having addressed the *Times*'s claims for relief

in this expedited appeal under the collateral

order doctrine, we deny the *Times*'s petition for
a writ of mandamus. *See United States v. Fer-
nandez–Toledo*, 737 F.2d 912, 919 (11th Cir.
1984) (holding that a writ of mandamus is ap-
propriate only for extraordinary situations
where no other adequate means of obtaining
relief is available).