**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John VALENTI and Charles
Corces, Defendants,**

**Times Publishing Company,
Intervenor–Appellant.**

**In re TIMES PUBLISHING
COMPANY, Petitioner.**

**Nos. 92–3125, 92–3128.**

United States Court of Appeals,
Eleventh Circuit.

Aug. 24, 1993.

George K. Rahdert, Rahdert & Anderson, St. Petersburg, FL, for intervenor-appellant.

Vicki Johnson, Asst. U.S. Atty., U.S. Attorney's Office, Tampa, FL, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, FAY, KRAVITCH, HATCHETT, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, and CARNES, Circuit Judges.*

*ON SUA SPONTE CONSIDERATION
OF REHEARING EN BANC*

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of his cause en banc, and a majority of the judges in active service not having voted in favor of it, Rehearing En Banc is DENIED.

TJOFLAT, Chief Judge, dissenting, in which KRAVITCH, Circuit Judge, joins:

I dissent from the court's decision to deny rehearing en banc. In an astonishing display of judicial overreaching well worthy of en banc review and correction, the panel in this case created out of whole cloth, and then decided, a nonexistent facial challenge to the constitutionality of the Middle District of Florida's dual docketing system. *See United States v. Valenti*, 987 F.2d 708, 715 (11th Cir.1993). To make matters worse, the panel decided its invented constitutional challenge in the highly improbable context of a third party intervenor's appeal from the denial of a collateral order unrelated to the merits of the underlying case; the parties against whom the panel granted relief, to wit, the judges of the Middle District, were not before the court. In short, the panel completely disregarded the case or controversy requirement of Article III of the Constitution.

In part I of this dissent, I explain the nature of the Middle District's dual docketing system and examine the record to illuminate the glaring absence of a facial challenge against the system. The record makes it all too clear that no case or controversy involv-

---

* Judge Black recused herself and did not participate in this decision.

ing the facial constitutionality of the Middle District's docketing procedure confronted the panel; only the procedure's application in the underlying case was at issue. By declaring the Middle District's dual docketing system unconstitutional,[1] the panel awarded relief that the third party intervenor never sought in the district court; relief far exceeding the bounds of the Article III case or controversy before it. In part II, I explain that this case presented an entirely improper springboard for the panel's vault into a wholesale condemnation of the Middle District's system.

## I.

### A.

The Middle District's internal operating procedures provide for the district's dual system of public and *in camera* docket sheets. Documents and proceedings are usually filed on the public docket. An entry makes its way onto the *in camera* docket sheet only with the express approval of the district court. The clerk of the court presents the court with a document submitted for entry on the *in camera* docket with a form order attached. The court indicates on the order whether the clerk should (1) file the document *in camera*, (2) file the document as part of the public record, or (3) return the document to the submitting attorney who may determine whether to resubmit the document as part of the public record. Once material is filed *in camera*, a notation appears on the public docket sheet indicating that an *in camera* docket sheet also exists in the case. One case, then, may have both public and *in camera* docket sheets.

*In camera* filings are not sequentially docketed on the public docket sheet because such a procedure could betray the nature of the contents of the *in camera* material. For example, assume that the court has publicly scheduled a sentencing hearing for a defendant in a multi-offender case. On the day before the hearing, the clerk of the court notes on the public docket the filing of *in camera* materials, and the next docket item indicates that the court has continued the sentencing hearing. An interested observer could easily conclude that the defendant has agreed to render "substantial assistance" to the prosecutor, and, in some cases, may be dead come morning.[2]

### B.

A criminal case involving charges of conspiracy, extortion, and bribery against a criminal defense lawyer and an assistant state attorney underlies this appeal. *See Valenti,* 987 F.2d at 710. Prior to the trial of this criminal case and at the request of the prosecution or the defense or both, the district court conducted several *in camera* proceedings; it conducted closed bench conferences, entertained motions *in camera,* and heard testimony *in camera.* On October 23, 1992, the *St. Petersburg Times* (the *Times* ) filed an "Emergency Motion of Times Publishing Company to Intervene and Unseal Court Records and Request for Expedited Hearing" in this case. Record, vol. 1, no. 109. In its motion, the *Times* detailed certain pretrial proceedings from which the district court excluded the public, and then requested that the district court (1) "grant it leave to intervene in this matter for the limited purposes set forth above," (2) unseal

---

**1.** With some restraint, I confine myself merely to pointing out that, by passing on the facial constitutionality of the dual docketing system when determining the system's constitutionality "as applied" in this case would have been enough, the panel ignored the time-honored principle that courts should avoid rendering sweeping constitutional decisions when a more narrow path is available. *See Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 445, 108 S.Ct. 1319, 1323, 99 L.Ed.2d 534 (1988) ("A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Colegrove v. Green,* 328 U.S. 549, 564, 66 S.Ct. 1198, 1208, 90 L.Ed. 1432

(1946) (Rutledge, J., concurring) (noting that "it is the very essence of our duty to avoid decision upon grave constitutional questions"); *United States v. Lovett,* 328 U.S. 303, 320, 66 S.Ct. 1073, 1081, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring) ("[T]he most fundamental principle of constitutional adjudication is not to face constitutional questions but to avoid them, if at all possible.").

**2.** For a more detailed discussion of the practice and purpose of the Middle District's dual docketing system, see *United States v. Baez–Alcaino,* 718 F.Supp. 1503, 1507 (M.D.Fla.1989).

the transcripts of "secret proceedings" on October 19, 1992, and (3) schedule oral argument. Nowhere in this pleading does the *Times* facially challenge the Middle District's dual docketing system.

On October 26, 1992, the *Times* amended its earlier motion. It complained of exclusion from additional *in camera* proceedings and requested the court to (1) grant it leave to intervene, (2) schedule oral argument, (3) unseal the transcripts of "secret proceedings" on October 19, 21, and 22, 1992, and (4) "refrain from conducting any portion *of this prosecution* except in open court" unless the court gives notice, articulates findings that closure is necessary, or certifies "*this record*" to the Eleventh Circuit "for emergency review." Record, vol. 1, no. 114 at 5–6 (emphasis added).[3] Again, the *Times* expressly limited the scope of its challenge to this case only.

On October 28, 1992, the court held a hearing on the *Times*' amended motion to intervene and unseal court records and, apparently acceding to the *Times*' request, indicated that it intended to certify questions to the Eleventh Circuit to gain some guidance on how to deal with the *Times*' motion. Record, vol. 4, no. 135 at 10. On November 2, 1992, the district court, without offering any jurisdictional or other legal basis for its action, certified questions to this court. A panel of this court later declined for lack of jurisdiction to entertain the district court's certified questions.

The next day, the *Times* filed with the district court its "Emergency Motion of Times Publishing Company to Stay Proceedings Pending Review by the United States Court of Appeals for the Eleventh Circuit." Record, vol. 1, no. 130. In its motion, the *Times* requested the district court to "stay all proceedings *in this criminal litigation* pending review of the certified questions." *Id.* at 7 (emphasis added). Again, the *Times*' pleading expressly confined itself to the immediate issue of accessing *in camera* materials in the underlying criminal case.

Also on October 29, the district court granted the *Times*' amended motion to intervene "*only insofar* as Times Publishing . . . may intervene *for the limited purpose* of seeking to unseal the court records to which they have not previously had access." Record, vol. 1, no. 132 (emphasis added). The court's use of restrictive language is unmistakable; the order explicitly limits the scope of the *Times*' intervention to unsealing items in the underlying criminal case only.

On November 6, 1992, the district court issued its "Order on Motion to Unseal Court Records." Record, vol. 1, no. 162. The court denied the *Times*' motion to unseal court records, but held that the Middle District's dual docketing system was "insufficient *in regard to the instant case*" and that "*in this particular case* the notice issue needs to be handled in a manner other than that dictated by the usual policies of the Clerk's office of this district." *Id.* at 6 (emphasis added). To that end, the district court directed the clerk of the court to enter

> any future *in camera* pleadings on the public docket as follows: 1) date of proceeding or pleading, 2) court approved label for *in camera* proceeding or pleading, and 3) docket number for *in camera* proceeding or pleading; and this record **shall** be **certified** for immediate appeal to the Eleventh Circuit Court of Appeals.

*Id.* As if its order left any doubt, the district court clarified that its "instructions . . . apply *only to this case and are not an attempt to alter the procedures of the court and the clerk's office* without the concurrence of the judiciary of this district." *Id.* at 6–7 (emphasis added). The district court exhibited considerable care in its effort to clarify that its order dealt only with *in camera* materials in the underlying criminal case.

On November 12, 1992, the *Times* petitioned this court for a writ of mandamus ordering the district judge to unseal the *in camera* materials and ordering the Middle District, as an institution, to abandon its dual docketing system. In the alternative, the *Times* asked this court to treat its petition as an appeal under the collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528

---

3. Incidentally, the *Times* nowhere in its motion suggested any legal basis for such certification.

(1949). The *Times*' petition was referred to a three-judge panel of this court which treated the petition as an appeal from the district court's order denying the *Times*' motion to unseal the *in camera* materials. *See Valenti*, 987 F.2d at 715 n. 4. Accordingly, the panel's scope of review was limited to the issues presented to the district court. The panel, however, disregarded the limited nature of the appeal before it and, after scarcely more than a paragraph's worth of discussion, declared the Middle District's dual docketing procedure facially (as opposed to "as applied") unconstitutional.

### C.

In *Wakefield v. Church of Scientology of California*, 938 F.2d 1226 (11th Cir.1991), we considered another challenge by the *Times* against the sealing of court files by a judge of the Middle District. In that civil case, we explained that we would not entertain new claims on appeal.

> Many of the theories presented to this court were never presented to the district court. Parties may make alternative claims, may change claims, may sometimes file inconsistent claims, but parties may not do so in the appellate court. This court reviews the case tried in the district court; it does not try ever-changing theories parties fashion during the appellate process.

*Id.* at 1229 n. 1. In the present case, the "case tried in the district court" dealt strictly with the unsealing of *in camera* materials in the underlying criminal case; the facial validity of the Middle District's dual docketing procedure was neither challenged nor at issue.

There is no question that the panel had the authority to review the district court's ruling on the *Times*' motion to unseal the disputed court records and to enter subsequent closed proceedings and *in camera* filings on the public docket in this case. *See In re Petition of Tribune Co.*, 784 F.2d 1518, 1521 (11th

Cir.1986). The panel's authority over the Middle District's dual docketing system, however, was confined by the extremely limited contours of this particular case. In the district court, the *Times* challenged the Middle District's dual docketing system only as it applied in the underlying case; it did not level a general challenge against the system. By reaching well beyond the substance of this case, the panel effectively transmuted the nature of the *Times*' appeal and issued an injunction against the judges of the Middle District of Florida who, for lack of notice, were oblivious to the possibility of such action. In effect, the panel exercised original jurisdiction over the judges of the Middle District and then inexplicably denied them the opportunity to defend their dual docketing procedure.

### II.

The district court permitted the *Times* to intervene in this criminal case for the limited purpose of seeking to unseal the court records in this case only. Neither a petition for a writ of mandamus[4] nor an appeal in a criminal prosecution is the proper vehicle for this court's condemnation of the Middle District's docketing system as facially unconstitutional. In its limited role as a third party intervenor, the *Times* could not properly challenge the facial constitutionality of the Middle District's dual docketing system; the judges of the Middle District were not parties to this action.

In what must be an unprecedented display of judicial force, the panel disregarded much—the absence of a facial constitutional challenge below, that the judges of the Middle District were not parties, and the panel's inability to enforce its bald decree of unconstitutionality against the Middle District—to reach the perceived constitutional issue. Curiously, once it declared that the Middle District's dual docketing system was unconstitutional, the panel granted no correlative relief. How could it? The panel did not have before

---

4. Of course, the panel expressly declined the *Times*' petition for a writ of mandamus. It cannot now be said that the panel properly could have considered the constitutionality of the Middle District's dual docketing system had it agreed

to consider the *Times*' mandamus petition. The panel did not comply with Fed.R.App.P. 21(b) (1993), which would have required the panel to solicit a response from the judges of the Middle District.

it any party against whom it could grant relief. The panel's opinion with respect to the dual docketing system is, therefore, strictly advisory. The Constitution, however, simply does not permit courts to dispense advisory opinions at their whim. *See Church of Scientology F.S.O. v. City of Clearwater,* 777 F.2d 598, 608 (11th Cir.1985) (noting "the constitutional prohibition against the rendering of advisory opinions"); *Wilson v. Zarhadnick,* 534 F.2d 55, 57 (5th Cir.1976)[5] ("Article III courts have jurisdiction over actual controversies; they are not permitted the luxury of issuing advisory opinions.").

I sympathize with the post-panel-opinion quandary in which the judges of the Middle District must find themselves. Perhaps the panel intends to make itself available to the judges of the Middle District for further consultation as to precisely what docketing procedures would be constitutionally permissible. Of course, I can only guess at what kind of extra-judicial procedural framework might accommodate such a conference. At best, it strikes me as unseemly for panels of this court to run about offering unsolicited constitutional advice to those who seem in need, but who neither have sought such constitutional counsel nor are parties to a suit raising the constitutional question.

The *Times'* perhaps convenient, but certainly improvident, challenge to the Middle District's dual docketing system compelled neither the district court nor the panel to consider the facial constitutionality of the Middle District's dual docketing system. The *Times* properly could have raised (and it still can raise) the issue by filing suit against the judges of the Middle District seeking civil injunctive relief. Such a suit would permit the judges of the Middle District to defend their dual docketing system, enable the judge presiding over the case to have a more complete understanding of the issue, and, if relief is forthcoming, empower that judge to fashion enforceable relief. *See Flast v. Cohen,* 392 U.S. 83, 96–97, 88 S.Ct. 1942, 1951, 20 L.Ed.2d 947 (1968) ("[T]he rule against advisory opinions also recognizes

that such suits often 'are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multifaceted situation embracing conflicting and demanding interests.'" (quoting *United States v. Fruehauf,* 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476 (1961))). Until that happens and this court's review is sought, there is no Article III case or controversy concerning the facial constitutionality of the Middle District's dual docketing procedure for this court to consider, and we have no jurisdiction. *See Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy.").

The *Times* intervened in this case for the narrow purpose of gaining access to the sealed record in the underlying criminal prosecution. Once the panel correctly resolved that issue, the *Times'* basis for intervention ended; the panel had decided the case or controversy on appeal. The panel's further decision to hold unconstitutional the Middle District's dual docketing procedure (particularly in light of its cursory treatment of the weighty issue) gives new meaning to the term "improvident." In short, the panel exceeded its authority under Article III of the Constitution.

### III.

The *Times* did not facially challenge the Middle District's dual docketing system in the district court. The district court permitted the *Times* to intervene for the limited purpose of seeking access to *in camera* materials in the underlying criminal prosecution only; the panel was not confronted by any case or controversy regarding the facial constitutionality of the Middle District's dual docketing system. Even so, in the context of a third party's interlocutory appeal, the panel issued a declaration that a nonparty's procedure was unconstitutional. I have trouble

---

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

envisioning anything more unwarranted than the panel's act of transforming the discrete issue with which it was presented into a wholesale constitutional review of the facial validity of the Middle District's dual docketing system. I would grant rehearing en banc.