UNITED STATES of America

v.

Lawrence E. ELLIS, a/k/a Laurie Ellis.

No. 93–52–Cr–J–10.

United States District Court,
M.D. Florida,
Jacksonville Division.

Dec. 22, 1993.

James Klindt, Asst. U.S. Atty., Jacksonville, FL, for the U.S.

Roberto A. Arias, and Stephen J. Weinbaum, Jacksonville, FL, for defendants.

George D. Gabel, Jr., Gabel, Hair & Taylor, Jacksonville, FL.

### *ORDER*

STEELE, United States Magistrate Judge.

### I. Status

This cause is before the Court on three motions: (1) defendant's Motion For Leave To Appeal *In Forma Pauperis* (Doc. # 168); (2) defendant's Motion To Appoint Counsel Under The Criminal Justice Act (Doc. # 170); and (3) Motion To Intervene And Objection To Closure Of Hearing (Doc. # 182) filed by the Fernandina Beach News-Leader, Inc. (News-Leader). The first two motions were referred to the undersigned by the District Court on November 1, 1993. (Doc. # 172).

Initially, both defendant's attorneys and the government requested that the fee arrangements between defendant and counsel be subject to an *in camera* review. (Doc. # 170, ¶ 4; Doc. # 171). At the scheduled hearing the government made an oral request to be present at the "*in camera*" review, arguing that the Court should exclude the press and public but not the government's representative. In an Order dated November 16, 1993 (Doc. # 177), the undersigned held that the phrase "*in camera review*", as used in Subsection (d)(2) of Addendum Four, Eleventh Circuit Plan Under The Criminal Justice Act, meant a review by the Court during which both the government representatives and the public were excluded and the record then sealed from public inspection. This Order was affirmed by the District Court on November 30, 1993 (Doc. # 181).

The undersigned scheduled the *in camera* review of the financial arrangements between defendant and his attorneys for December 3, 1993, to be immediately followed by the public hearing concerning defendant's current financial condition. At this scheduled hearing the United States requested that the review be continued so that it could determine whether the District Court's Order was appealable and to confirm its authorization to appeal. Defense counsel did not object to the continuance request, being of the view that they did not wish to respond to the Court's inquiry even in an *in camera* review if there was to be an appeal which may result in the public disclosure of their evidence and information. The Court proceeded with the hearing concerning defendant's current financial condition and heard oral arguments concerning the News-Leader's objections to the *in camera* review of the financial arrangements between counsel and defendant Ellis. The Court file now reflects that the government did not take an appeal from the prior Order.

### II. Motion To Proceed *In Forma Pauperis*

Defendant Ellis seeks leave to proceed on appeal *in forma pauperis*. A defendant who is allowed to proceed *in forma pauperis* is excused from the prepayment of costs and fees, 28 U.S.C. § 1915(a), can obtain trial transcripts and the printed record at the expense of the United States, 28 U.S.C. §§ 753(f), 1915(b), and can receive a court appointed attorney. 18 U.S.C. § 3006A(c).

In compliance with F.R.App.P. 24(a), defendant Ellis submitted a Financial Affidavit, which has always been part of the public record. (Doc. # 169). At the December 1, 1993 hearing defendant's attorneys advised that Court that there was an additional debt of $3,065 which defendant owed to an investigator for services rendered; there is also a trust account for appeal expenses which cur-

rently has $426.27 and which is not expected to receive any significant additional contributions. Defense counsel have now submitted updated information (Doc. # 189) stating that a Satisfaction of Mortgage from defendant's mother for a $52,000 mortgage on the family residence was filed for the purpose of clearing title so defendant's wife could refinance the house; the debt remains outstanding but is no longer secured by the residence. Defendant Ellis is not receiving a pension, but is contesting that decision. Therefore, defendant's financial condition may change in the future if the pension decision is modified.

Based upon a review of the evidence, the Court finds that defendant Ellis is currently unable to pay costs and fees and is financially unable to obtain counsel. Therefore, the Motion For Leave To Appeal *In Forma Pauperis* (Doc. # 168) will be **granted in part.** Counsel shall use the funds in the appeal trust account to pay filing fees and costs; when that fund is depleted, further costs and fees (except for attorney fees, which are discussed below) will be paid by the United States.

Because the financial condition of defendant may well change during the course of appeal, the United States is granted leave to file a motion to seek reimbursement. § 3006A(c) provides that "If at any time after the appointment of counsel the United States magistrate or the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate." Subsection (f) allows reimbursement for court appointed counsel and other services. As discussed below, the size of the fee paid to retained counsel may justify reimbursement; this will be decided after the hearing discussed below.

### III. Motion To Intervene

All parties agreed at the December 1, 1993 hearing that the Motion To Intervene filed by the News–Leader should be granted, and the undersigned orally granted that portion of the motion. The Court confirms that verbal order and the Motion To Intervene filed by the News–Leader is **granted.**

### IV. Motion For Court Appointed Counsel

While defendant Ellis is financially unable to obtain appellate counsel within the meaning of 18 U.S.C. § 3006A and is therefore eligible for court appointed counsel, there remains the issue of whether his retained counsel should be required to continue to represent him. Retained counsel has an obligation to continue to represent a defendant, including on appeal, unless relieved by the court. Local Rule 2.03(b), United States District Court for the Middle District of Florida; Eleventh Circuit Plan Under The Criminal Justice Act, Addendum Four (d)(2). The preliminary issue is the appropriate procedure to be followed to decide the issue.

The News–Leader objects to the *in camera* review of the financial arrangements between defendant Ellis and his attorneys, and argues that the review should be conducted in a proceeding open to the press and public. Defense counsel seek to have the inquiry into the fee arrangements conducted *in camera,* as previously defined in the November 16, 1993 Order. The United States initially asserted that the press and public should not be present, but that the government representative should be present. (Doc. # 78, pages 3–4). The United States now argues that the press, public and government representatives should all be present for the inquiry.

■ It is possible to read Addendum Four (d)(2) and Local Rule 2.03(d)[1] to require that

---

1. Addendum Four (d)(2) of the Eleventh Circuit Plan Under The Criminal Justice Act which provides:

Unless approved in advance by this court, the district court is not authorized to appoint counsel on appeal to represent a defendant who was represented in the district court by retained counsel without first conducting an *in camera* review of the financial circumstances

of the defendant and of the fee arrangements between the defendant and retained trial counsel.

Local Rule 2.03(d) of the United States District Court, Middle District of Florida, details the substance of this inquiry:

If a defendant who had retained counsel during trial moves the court to proceed on appeal *in forma pauperis* or for appointment of Crimi-

the review always be *in camera*. The News-Ledger argues that such an interpretation would render these rules unconstitutional. *Globe Newspapers Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). The Court does not interpret Addendum Four (d)(2) or Local Rule 2.03(d) to mandate an *in camera* review. For example, if both parties had no objection to a public proceeding, the Court would not view either the Addendum or the Local Rule as compelling an *in camera* proceeding. Rather, the Court interprets the Addendum and Local Rule to mandate a review by the Court prior to allowing retained counsel to withdraw, and to authorize that the required review be held *in camera* in appropriate circumstances. The Addendum and Local Rule are mandatory as to a review, but permissive as to the *in camera* nature of the review; they grant authority rather than compel a certain type of proceeding.

■ Having defined *in camera* review in the prior Order, and having now concluded that such an *in camera* review is authorized but not mandated by the Addendum or Local Rule, the Court must consider whether the review in this case should be held *in camera* or should be open to the public, press, and government. *United States v. Valenti*, 987 F.2d 708, 712–13, *reh. denied*, 999 F.2d 1425 (11th Cir.1993), surveyed the law regarding the closure of criminal proceedings and provides the analytical framework for this determination. *Valenti* noted that the public and the press have a qualified constitutional right to attend criminal proceedings. Whether this First Amendment right attaches to a particular process within the criminal proceeding requires a consideration of two factors: (1) whether the place and process have historically been open to the press and general public; and (2) whether public access plays a significant positive role in the functioning of the particular process in question. If this analysis establishes that the First Amendment right of public access has not

attached, the public may be excluded from the process. If this analysis establishes that the First Amendment right of public access has attached, the right of public access to the process in question is still not absolute. Even where the First Amendment right of public access has attached, the proceeding may be closed if (1) there has been notice and the opportunity to be heard on the proposed closure, and (2) the court articulates specific findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The same analysis applies to a post-trial proceeding. *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir.1983); *CBS, Inc. v. United States District Court*, 765 F.2d 823, 825 (9th Cir.1985).

**A. Has First Amendment Right Attached?:**

■ While there is a First Amendment right of access to criminal trials, the right of access to other criminal proceedings is determined on a case by case basis. *United States v. Noriega*, 917 F.2d 1543, 1547 n. 6 (11th Cir.), *cert. denied* 498 U.S. 976, 111 S.Ct. 451, 112 L.Ed.2d 432 (1990). The first issue therefore is whether the First Amendment right to public access has attached to a proceeding in which the court reviews the fee arrangement between a criminal defendant and his or her attorney in order to determine whether the retained attorney should be allowed to withdraw and counsel be appointed by the Court.

**(1) *Historical Access By Public***

Historical access by the public is important because it implies the favorable judgment of experience. *Globe Newspapers*, 457 U.S. at 605, 102 S.Ct. at 2619. None of the interested parties have provided any precedent involving precisely this type of hearing. In the civil context, there is a long history of detailed disclosure about attorney fees and the services rendered when there is a fee-shifting statute or contract. The Court routinely

nal Justice Act appellate counsel, retained counsel will be required to disclose *in camera* (1) the total amount of fees and costs paid, (2) by whom fees and costs were paid, and (3) the costs actually incurred and services actually rendered. All information submitted will be

viewed *in camera* by the court for the purpose of deciding the defendant's *in forma pauperis* motion and for determining whether retained counsel should continue to prosecute or defend the appeal.

reviews the hours, rates, and services in a public setting. *E.g., Resolution Trust Corp. v. Hallmark Builders, Inc.,* 996 F.2d 1144 (11th Cir.1993). In the fee-shifting context the client and the attorney effectively consent to disclosure of this information as an incidental requirement of seeking to shift fees and costs. The current situation is one step removed. Defendant Ellis does not seek to shift the burden of the fees and costs he has already paid; however, the amount of that fee will have a bearing on whether public funds will now be expended on his behalf to prosecute his appeal.

On the other hand, courts have not readily invaded the attorney client relationship, particularly in criminal cases. Even where the attorney has received public funds, the courts have not required complete disclosure of the details of the attorney client relationship. The case cited by the News–Leader most on point was careful to note that only a summary of the dollar amounts and hours were disclosed, not the supporting documents. *United States v. Suarez,* 880 F.2d 626, 630 (2nd Cir.1989). Although in a different context, the Eleventh Circuit has noted that the communications between attorney and client, even if not privileged, have historically been private. *United States v. Noriega,* 917 F.2d at 1547–48.

### (2) *Significant Positive Role of Public*

■ The second factor is whether there is particular significant positive role to the presence of the public. The cases recognize that the presence of the public improves the performance of all participants, educates the public in the workings of the judicial process, and subjects the judicial system to a healthy public scrutiny. There is understandable public interest in this matter because the impact of the hearing may be the expenditure of public funds.

Applying these factors, the Court concludes that a First Amendment right of public access does attach to a proceeding in which the court reviews the fee arrangement between a criminal defendant and his or her attorney in order to determine whether the retained attorney should be allowed to withdraw and counsel be appointed.

### B. Is Right Of Access Applicable In This Case:

■ Because the First Amendment right of access is not absolute, the Court must consider whether the facts of this case justify closure. "This constitutional assessment inevitably involves in the end the exercise of judgment ..." *In re Charlotte Observer (Div. of Knight Pub. Co.),* 882 F.2d 850, 854 (4th Cir.1989). Here, an *in camera* review process is necessary to achieve the legitimate purposes of the preservation of the privacy interests of both the defendant and his attorney, limit of the intrusion on the attorney client relationship, and preserve attorney client communications. There is an additional consideration of defendant Ellis' fifth amendment privilege. Defense counsel represented at the December 1, 1993 hearing, without contradiction from the government, that there was an active IRS investigation still ongoing focusing upon defendant's income from his drug activities. The inquiry concerning the financial arrangements between defendant and his attorneys create a reasonable fear of incriminating information. The Court finds that there is a substantial probability that these legitimate interests will be prejudiced by a public hearing.

There is no less intrusive method of preserving these legitimate purposes than to conduct an *in camera* hearing, at least initially. It is possible, perhaps likely, that not all information disclosed in the hearing will merit continued secrecy. For example, the government has suggested in a passing footnote that there may have been a waiver to some degree of these concerns. The Court simply cannot make a definitive ruling without hearing the evidence. Therefore, it will be necessary to conduct the hearing *in camera* and then decide what portions will remain sealed. This initial closure will prevent the prejudice which is substantially probable. At a minimum, the resulting order deciding the motion will provide the public with sufficient information to evaluate the decision; the extent of this information cannot be determined until after the hearing.

Retained counsel are reminded that because they have not yet been allowed to

withdraw they must continue to take all steps necessary to preserve defendant's appellate rights.

Accordingly, it is

**ORDERED:**

(1) The Motion For Leave To Appeal In Forma Pauperis (Doc. # 168) is **granted in part.** Counsel shall use the funds in the appeal trust account to pay filing fees and costs; when that fund is depleted, further costs and fees (except for attorney fees, which are discussed below) will be paid by the United States. The United States is granted leave to file a motion to seek reimbursement.

(2) Motion To Intervene (Doc. # 182) filed by the Fernandina Beach News–Leader, Inc. (News–Leader) is **granted;** and

(3) The Motion To Appoint Counsel Under The Criminal Justice Act (Doc. # 170) is **taken under advisement.** An *in camera* hearing as to the fee arrangement between counsel and defendant will be held on **January 13, 1994 at 9:30 a.m. in Courtroom 6,** after which the Court will decide the motion and unseal the appropriate portion of the hearing.

**DONE AND ORDERED.**