The HARTFORD COURANT COMPANY, Plaintiff,

American Lawyer Media, Inc., d/b/a the Connecticut Law Tribune Intervening plaintiff,

v.

Joseph PELLEGRINO, Chief Court Administrator and William J. Sullivan, Chief Justice Defendants.

No. 3:03 CV 00313(GLG).

United States District Court, D. Connecticut.

Nov. 3, 2003.

Paul Guggina, Ralph G. Elliot, Tyler, Cooper & Alcorn, Hartford, CT, for Plaintiff.

Daniel J. Klau, Jodi Lynn Zils Gagne, Pepe & Hazard, Hartford, CT, for Plaintiff/Intervenor Plaintiff.

Anthony M. Fitzgerald, Carmody & Torrance, New Haven, CT, Defendant.

James K. Robertson, Jr., Jonathan M. Weiser, Maureen Danehy Cox, Carmody & Torrance, Waterbury, CT, for Defendant/Intervenor Defendant.

### RULING ON MOTIONS TO DISMISS

GOETTEL, District Judge.

Plaintiffs in this action of first impression challenge the constitutionality of the judicial rules of the Connecticut Superior Court and state statutes providing for orders to seal Connecticut state court files. Plaintiffs seek injunctive relief. Before this court are defendants' motions for dismissal of the complaint and intervening complaint. For the reasons set forth below, the court **grants** defendants' Motions to Dismiss (**Docs. # 10 and # 22**).

### I.   Factual Background

On February 21, 2003, plaintiff the Hartford Courant Company ["the Courant"] filed a complaint against defendant Joseph Pellegrino, the Chief Court Administrator of the state courts in the State of Connecticut ["Judge Pellegrino"]. On June 18, 2003, American Lawyer Media, Inc. d/b/a the Connecticut Law Tribune ["the Law Tribune"] filed an intervening complaint against Judge Pellegrino and an additional defendant, William J. Sullivan, Chief Justice of the Connecticut Supreme Court ["Chief Justice Sullivan"]. Pursuant to 42 U.S.C. §§ 1983 and 1984, plaintiffs allege violation of their rights under the First and Fourteenth Amendments to the United States Constitution and Article First §§ 4, 5, 8 and 10 of the Connecticut Constitution resulting from judicial orders to seal Connecticut state court files.

In the complaint and intervening complaint, plaintiffs allege that a memo dated June 12, 2000, from Judith Stanulis, Civil Court Manager to Trial Court Administra-

tors and Judicial District Chief Clerks [the "Stanulis Memo"], sets forth a practice of sealing files according to a three tiered system. As described in the Stanulis memo, Level 1 sealing is used when a case is statutorily sealed or sealed upon order of the court. Court personnel may not acknowledge the existence of such cases; nor do such cases appear on the official docket system or motions calendar. (Intervening Compl., Exh. B). Level 2 sealing is used when the court orders all documents of a file sealed, but permits disclosure of the docket number and the case caption. Under Levels 1 and 2, the sealing orders are also under seal. Level 3 sealing is used when the court orders that a specific motion, document or pleading be sealed. Plaintiffs do not object to Level 3 sealing.

In the complaint and intervening complaint, plaintiffs allege that Levels 1 and 2 sealing practices abridge their right to access the courts and deny plaintiffs notice and opportunity to intervene in such cases for purposes of challenging the sealing orders. Plaintiffs seek an order with respect to each Level 1 and Level 2 case compelling defendants to provide the names and status of the parties, the docket number of the case and the judicial district where the case is pending, the list of every document in the case file, the nature of the case, and a copy of the order pursuant to which the case was granted either Level 1 or Level 2 sealing status.

Defendants state that in a press release dated February 3, 2003, Chief Justice Sullivan announced that a group of judges had reviewed these sealing practices and agreed that the practice of maintaining secret files under Level 1 should be eliminated. This matter, as well as development of specific criteria for sealing family cases, was referred to the Rules Committee of the Superior Court for its consider-ation at the judges' annual meeting in June 2003. (Def. Pellegrino's Mem., Ex. B). At oral argument on August 21, 2003, defendants stated that there is only one Level 1 sealed case in the system and that all other pending cases are now Level 2 cases. (Tr. at 12). Additionally, defendants claim that they have provided plaintiffs with electronic information regarding cases sealed under Level 2 which will permit plaintiffs to intervene on any motions to seal. (Tr. at 12).

However, the Hartford Courant counters that the data concerning the Level 2 cases only lists the name of the case and the docket number, and that it cannot ascertain whether these files are opened or closed; or whether any sealing order was ever issued and if a sealing order was issued what the scope of the order was. (Tr. at 28–29). Furthermore, the Hartford Courant claims that the new rules regarding sealing adopted by the judges in June 2003 do not affect the 10,000 Level 2 cases currently pending. (Tr. at 32).

## II. Discussion

In deciding a motion to dismiss, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014–15 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784,

786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683).

*Disclaimer of Power*

Defendants first argue that they lacked the power and authority to provide plaintiffs with the relief they seek. (Def. Pellegrino's Mem. at 6–7). Citing Connecticut General Statutes § § 51–5a and 51–5(b)a, defendants assert that neither Judge Pellegrino nor Chief Justice Sullivan in their administrative capacities are empowered by statute to overrule or vacate sealing orders entered by the Superior Court judges. (Def. Sullivan's Mot. at 3–4). Their administrative duties comprise mainly of accounting, personnel, scheduling and record keeping for the Judicial Department. (Def. Pellegrino's Mem. at 18). Defendants make reference to *Rules Committee of the Superior Court of Connecticut v. Freedom of Information Comm'n*, 192 Conn. 234, 245, 472 A.2d 9 (1984), *Pamela B. v. Ment*, 244 Conn. 296, 326, 709 A.2d 1089 (1998), and *Blumenthal v. Barnes*, 261 Conn. 434, 463, 804 A.2d 152 (2002), to support their argument that administrators' powers are defined and limited by statute. Thus, defendants assert, that as administrators, defendants may not amend the rules of practice and provide plaintiffs with the relief they seek. (Def. Pellegrino's Mem. at 19). Defendants note that only through Judge Pellegrino's judicial capacity as an Appellate Court judge and through Chief Justice Sullivan's judicial capacity as a Supreme Court justice may they review or reverse any sealing orders. (Def. Sullivan's Mot. at 4).

In response, plaintiffs counter that defendants' disclaimer of power argument fails because the Level 1 and 2 files were sealed in accordance with memoranda issued by defendants' office and that because of the secrecy of these files, it is not known whether any Superior Court judge ever entered any sealing order in these cases. (Pl.'s Mem. at 3–5). Plaintiffs argue that defendants are the proper parties because defendants have the administrative authority to direct the state court clerks to disclose the dockets sheets. (Intervening Pl.'s Mem. at 13).

*First Amendment*

Defendants object to plaintiffs' argument that they have a first amendment right to the requested docket sheets. Defendants counter that there is no first amendment guarantee to access certain court records. (Defs.' Reply Br. at 2). In support, defendants cite the case *Nixon v. Warner Communications, Inc.* 435 U.S. 589, 598, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), where the court held that "the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files." In *U.S. v. McVeigh*, 119 F.3d 806, 812 (10th Cir.1997), the court notes that "[t]here is not yet any definitive Supreme Court ruling on whether there is a constitutional right of access to court documents and, if so, the scope of such a right." Defendants opine that there is no definitive case decided in the Second Circuit. (Defs.' Reply Br. at 5). In support, defendants cite *Doe v. Connecticut Bar Examining Committee*, 263 Conn. 39, 66, 818 A.2d 14 (2003), for the proposition that the courts must balance the public's right to access the courts and the litigants' legitimate privacy concerns.

Defendants also object to plaintiffs' argument because the cases they cite involve orders and documents in criminal cases and the Sixth Amendment right to a public trial, as distinguished from the present case which involves civil and family law matters. (Defs.' Reply Br. at 6). Defendants also contest the relevancy of the plaintiffs' arguments in regard to cited "gag order" cases, noting that plaintiffs have failed to demonstrate that the parties

in the Level 1 and 2 cases would speak to the press but for the sealing orders. (Defs.' Reply Br. at 6).

## A. Abstention Doctrines

Although the abstention arguments are not the first objections raised by defendants, the court will consider the abstention argument first because a decision on this issue could obviate the need to reach the remaining issues. The court also believes that a discussion of the issues in the case of *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 77 Conn.App. 690, 825 A.2d 153 (Conn.App. July 1, 2003), *cert. granted,*—A.2d—(Conn. Sept. 18, 2003) (No.17059) is merited because the case is central to the arguments of both parties in the present litigation.

In *Rosado,* the New York Times sought to inspect case files, which had been settled and withdrawn, alleging sexual abuse by priests working for the Bridgeport Diocese. The clerk's office refused inspection because of sealing orders that had been entered while the cases were still pending. The New York Times filed an emergency petition requesting the court to vacate the sealing and protective orders and to require the filing of discovery materials. Following receipt of the Times' application, a Superior Court judge granted permission to open a new file because the Times represented the public in seeking access to public records in the court's custody. The Courant, and other newspapers, subsequently filed motions to intervene. Upon review, the Connecticut Appellate Court stated that when the new file was opened, "the trial court's actions had the equivalent effect of restoring the underlying cases to the docket." *Rosado,* 77 Conn.App. at 718,

825 A.2d 153. The Appellate Court concluded that the trial court lacked this authority because Conn. Gen.Stat. § 52–212a imposes a 120 day limit on opening final orders and that sealing orders do not constitute an exception. *Id.* At 734–735.

The parties disagree as to the relevance of the *Rosado* case to the matter before this court. The Courant's petition for certification for appeal from the Connecticut Appellate Court has been granted and is limited to the following issue: Did the Appellate Court properly conclude that the trial court improperly granted the application to create a new file? *Rosado v. Bridgeport Roman Catholic Diocesan Corp.,* Order, 266 Conn. 907, 832 A.2d 72 (September 18, 2003).

### Pullman Abstention

■ Under the Pullman abstention doctrine, if the plaintiff contests the constitutionality of a state or local law that is unclear and susceptible of a state court determination that may either avoid of modify the constitutional question, the federal court may abstain until the highest court in the state resolves the state law issue. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941). This doctrine has been extended to § 1983 actions. *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959).

■ Defendants maintain that the state court files involve "an important state function and a compelling state interest." (Def.'s Mem. at 25). Defendants also claim that plaintiffs are aware that the Connecticut judiciary is reviewing its rules regarding the sealing policy[1] and that the

---

1. The court notes that the new rules regarding the Identification of Cases, Motion to File Record Under Seal and Lodging a Record are effective July 1, 2003. See Connecticut Rules

of Court § § 7–4A, 7–4B, and 7–4C. Additionally new and amended rules regarding Closure of Courtroom in Civil Cases, Sealing Files or Limiting Disclosure of Documents in

State legislature is considering new legislation regarding the sealing process. (Def. Pellegrino's Mem. at 27). Relying on *City of Hartford v. Chase*, 942 F.2d 130, 137 (2d Cir.1991) (Pratt, C.J.concurring), defendants also characterize sealing court files as a matter of localized concern because sealing also entails special requirements regarding maintenance and handling of such files.

Defendants cite the case of *Kamasinski v. Walsh*, No. CIV. 3:96CV1258(AHN), 1996 WL 684420, *2 (D.Conn. Oct.9, 1996), for the proposition that a federal court may abstain from determining the constitutionality of a statute when the state courts are deciding whether to apply retroactively an amendment to the statute. (Def.'s Mem. at 26). Applying this reasoning, defendants claim the case of *Rosado*, supra, may be dispositive of a central issue in this litigation, specifically, the constitutionality of Conn. Gen.Stat. § 52–212a, which provides in relevant part:

> Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed.

One of the questions in *Rosado* is whether the judges of the superior court have authority to reverse sealing orders in cases that went to judgment, were settled or withdrawn after the four month period has elapsed. (Def. Pellegrino's Mem. at 28).

In opposition, plaintiffs counter that *Kamasinski* does not apply because there is no pending state law issue that is subject to review that would eliminate the federal constitutional issue. First, plaintiffs claim that no statute exists authorizing Level 1 filing. (Pl.'s Mem. at 17). Second, while plaintiffs acknowledged that the Connecticut judiciary has revised its rules regarding sealing, they note that the amended rules have no retroactive effect on existing sealed files. (Pl.'s Mem. at 17–18). Third, plaintiffs do not agree that *Rosado* is dispositive of this case because interpretation of Conn. Gen.Stat. § 52–212a will not provide the relief which they seek—an order to provide docket sheets for the estimated 10,000 cases sealed under Level 1 and Level 2. (Pl.'s Mem. at 18).

In reviewing this doctrine, the court concludes that the *Pullman* abstention is inapplicable because a Connecticut Supreme Court ruling in *Rosado* will not resolve the present litigation. The question for review by the Connecticut Supreme Court is limited and the Connecticut Supreme Court may not reach the issue of when a court has continuing jurisdiction with respect to sealing and protective orders in place at the time a case is concluded or withdrawn pursuant to the "continuing jurisdiction" exception provided for in Conn. Gen.Stat. § 52–212a. Even if the Connecticut Supreme Court does reach that matter, the holding does not settle the vacatur of orders in open Level 1 and Level 2 cases where sealing orders exist.

### Younger Abstention

Next, defendants urge the court to abstain under the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), arguing that the "principles of comity and federalism militate in favor of abstention" because of the important state and local interests, the ongoing state proceedings and the unsettled questions of state law. (Def. Sulli-

Civil Cases, Closure of Courtroom in Family Matters and Sealing Files or Limiting Disclosure of Documents in Family Matters are effective July 1, 2003. See Connecticut Rules of Court § § 11–20, 11–20A, 25–59, and 25–59A.

van's Mem. At 9). Although *Younger* was decided in response to an ongoing state criminal proceeding, its reasoning has been extended to civil and administrative proceedings. See *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). In *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Court established a three prong test for the determination of a *Younger* abstention to non-criminal proceedings: 1) whether there are important state interests at stake; 2) whether state procedures are available to the federal plaintiff to raise his federal claim in state court; and 3) whether there are ongoing state proceedings.

In applying the *Younger* test, the parties disagree as to whether there are ongoing state proceedings. At oral argument, defendants argued that *Rosado* is a pending case for *Younger* purposes because any sealing order that remains subject to reinstatement pursuant to Conn. Gen.Stat. § 52–212a is an ongoing state proceeding for *Younger* purposes. (Def.'s Mem. at 31). Plaintiffs argue that defendants have not identified a particular case in which plaintiffs would intervene; plaintiffs also object to the reference of sealing files as involving "an important state interest that concerns the central sovereign functions of state government." (Pl.'s Mem. at 21).

Not surprisingly, the Courant regards *Rosado* differently. Plaintiffs maintain that *Rosado* has no applicability to the present litigation because the issue in that case pertained to the re-opening of closed files, not to cases in which plaintiffs had filed a motion to intervene. (Tr. at 35). Plaintiffs also assert that the *Younger* doctrine does not apply because neither the Courant nor the Law Tribune were parties to the Level 1 and Level 2 cases at issue. (Tr. at 50).

■ In reviewing the applicable law, *Younger* requires a federal court to abstain from enjoining a pending state proceeding where an important state interest is involved and the movant will have an adequate opportunity to raise his constitutional claims in the state proceedings. At issue here is whether the federal and state plaintiffs should be considered the same for *Younger* purposes. In *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975), three corporations that ran topless bars, operating in the same town and represented by the same counsel, challenged a local ordinance regulating topless dancing. All three corporations filed suit in federal court, and a state criminal prosecution was instituted against one bar that resumed its presentation of topless dancing the day after a preliminary injunction was obtained. The Supreme Court held that abstention was appropriate as to that one bar, but disagreed with the Second Circuit "that all three plaintiffs should automatically be thrown into the same hopper for Younger purposes . . . ." *Id.* at 928, 95 S.Ct. 2561. While noting that "there plainly may be some circumstances in which legally distinct parties are so closely related that they should all be subject to the Younger considerations that govern one of them," the Court concluded that the present case was not such a case. *Id.* at 929, 95 S.Ct. 2561. "[W]hile respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management. We thus think that each of the respondents should be placed in the position required by our cases as if that respondent stood alone." *Id.; see also Obeda v. Connecticut Bd. of Registration for*

*Prof'l Eng'rs and Land Surveyors*, 570 F.Supp. 1007, 1012 (D.Conn.1983) (examining factors of ownership, management and control to determine that state and federal plaintiffs' interests were sufficiently intertwined to warrant *Younger* abstention where federal plaintiff was president and 95% owner of the state court litigant, and thus a form of alter ego).

■ Furthermore, a plaintiff is no under obligation to await the state court outcome before bringing his § 1983 federal constitutional claims in a federal forum. *See Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) ("When federal claims are premised on 42 U.S.C. § 1983 ... we have not required exhaustion of state judicial or administrative remedies, recognizing the paramount role Congress has assigned to the federal courts to protect constitutional rights."). "[N]owhere in the Younger line of cases is it even intimated that, while a state prosecution is pending, a federal court, in an appropriate case between persons not parties to the state action, may not address issues of federal law that are simultaneously being litigated in state court." *United States v. Composite State Bd. of Med. Examiners*, 656 F.2d 131, 137 (5th Cir.1981) (citations omitted). A "plaintiff's ability to sue to vindicate his rights in federal court is not affected by the simultaneous pendency of a state prosecution against someone else (whether or not the state defendant is a litigant in a federal action)." *Robinson v. Stovall*, 646 F.2d 1087, 1090 (5th Cir.1981).

Abstention bars relief to a federal plaintiff only in the situation where the interests of the state defendant and the federal plaintiff are so "intertwined" as to be considered identical. But neither a mere "common interest" in the outcome of federal litigation nor a common effort in pressing it requires abstention as to all plaintiffs. *Composite State Bd. of Med. Examiners*, 656 F.2d at 137.

■ Applying the principals of the above-cited cases, this court concludes that the *Younger* doctrine is inapplicable because there is not a strict identity of the state and federal plaintiffs. In the state court action, the plaintiffs were the New York Times and the Hartford Courant, whereas the federal plaintiffs are the Hartford Courant and the Connecticut Law Tribune. While each publish newspapers and raise the same constitutional objections, they have separate ownership, management and control. Furthermore, a ruling by the Connecticut Supreme Court in the *Rosado* case will not provide plaintiffs with the relief they seek in this litigation.

### *Burford Abstention*

■ The *Burford* doctrine applies when federal court relief will disrupt a complex state regulatory scheme and thwart the state's efforts to centralize judicial review in a unified court of special competence. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (where administrative system, including discrete multi-level judiciary, for the regulation, administration and conservation of Texas's oil and natural gas industry whose impact upon the state's economy was undisputed). The Court has elaborated on the *Burford* doctrine, stating that a federal court may abstain:

> (1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*New Orleans Public Service, Inc. v. Council of the City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (citation omitted).

■ Defendants argue that this abstention doctrine applies because the Connecticut judiciary, its administrators and the state legislature, as a matter of public policy, must maintain a comprehensive filing system. (Def. Pellegrino's Mem. at 32). Defendants state that "[i]t is a central sovereign function of state government that the state court system assume responsibility for its own administration, including the retention of custody and jurisdiction over its files." (Def. Sullivan's Mem. at 10). Defendants claim that the aforementioned new rules of court and contemplated legislation addressing the issue of sealing relate to this function and that federal intervention is not warranted in light of these efforts. (Def. Pellegrino's Mem. at 32).

Plaintiffs counter that this court should not abstain because the new rules regarding sealing adopted by the judges in June 2003 do not affect the 10,000 Level 2 cases currently pending. (Pl.'s Mem. at 24). Thus, retention of federal court jurisdiction will not upset a complex state regulatory scheme.

The court agrees that the *Burford* abstention doctrine is inapplicable to this litigation because the Connecticut Superior Court rules and statutes do not comprise a complex state regulatory scheme. *See Alabama Public Service Comm'n v. Southern Railway Co.,* 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) (abstention warranted where state commission required railroad to continue local service despite financial loss), nor does it involve a procedure unique to Connecticut, such as that involved in *Glen 6 Assocs., Inc. v. Dedaj,* 770 F.Supp. 225 (S.D.N.Y.1991) (abstention where removal on diversity grounds result-ed in application of Federal Rules of Civil Procedure, which differed substantially from New York summary process applicable in state court action). The adjudication of plaintiffs' federal constitutional claims will in no way interfere with the state regulatory system as contemplated by *Burford.*

### Rooker–Feldman Abstention

■ Defendants also urge application of this abstention doctrine, which is invoked where the federal district court is called upon to act as a state appellate court. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).

■ Defendants argue that the sealing orders of the Connecticut Superior Court judges were issued pursuant to various rules of court and statutes, including those governing family and juvenile matters, and that the relief plaintiffs seek is the "overturning and/or violating the orders of several judges of the Connecticut superior court." (Def. Pellegrino's Mem. at 2). Defendants contend that the sealing orders are subject to appellate review as set forth by statute and rule, that plaintiffs' allegations of constitutional violations are "inextricably intertwined" with the state court actions, thus the federal district court is not the appropriate forum for such review. (Def. Pellegrino's Mem. at 33–34).

Plaintiffs counter that review in the Connecticut state courts is not possible because the existence of Level 1 cases is secret and only the caption name and docket number is available for Level 2 cases, and that this lack of case detail precludes appealing sealing orders, denying them a full and fair opportunity to litigate the sealing orders. (Pl.'s Mem. at 25 & 28). Thus, plaintiffs reason the abstention doctrine under *Rooker–Feldman*

is inapplicable here because there are no issues in this case that are "inextricably intertwined" with questions already decided in a state court case. (Pl.'s Mem. at 28). Plaintiffs also cite *Dow Jones & Co. v. Kaye*, 90 F.Supp.2d 1347 (S.D.Fla.2000), for the proposition that as non-parties, they are not required to exhaust state remedies before bringing a claim in federal court. (Intervening Pl.'s Mem. at 5).

Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir.1995), and federal review, if any, can occur only by way of a certiorari petition to the Supreme Court. *Rooker*, 263 U.S. at 416, 44 S.Ct. 149. "Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir.1998).

This doctrine also prohibits district court review of state court judgments to claims that are "inextricably intertwined" with a state court's determinations. *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir.2002). A claim is inextricably intertwined with the state court judgment if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, C.J. concurring). "A party has no obligation to attempt to intervene in a state court action when it is not named in the suit in order to preserve its rights." *U.S. v. Owens*, 54 F.3d 271, 274 (6th Cir.1995).

The facts of this case do not fit neatly into one of the above described abstention doctrines. Therefore, the next step is to determine whether the plaintiffs have a constitutional right to the civil docket sheets for the Level 1 and Level 2 cases and whether the defendants have the authority and power to provide such information.

The public and the press have a right to attend trials in civil matters and to inspect and copy judicial records. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). Public scrutiny over the court system promotes confidence in the fair administration of justice, as well as affording citizens a form of legal education. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). "[T]raditional Anglo–American jurisprudence distrusts secrecy in judicial proceedings and favors a policy of maximum public access to records of judicial tribunals." *Wilson v. Science Applications International Corp.*, 52 Cal.App.4th 1025, 1030, 60 Cal.Rptr.2d 883 (1997). The guarantee of open public proceedings in civil trials applies to the sealing of court documents. *Publicker Industries, Inc. v. Cohen*, 733 F.2d 1059, 1070–1071 (3rd Cir. 1984). The press has standing to challenge a protective order for abuse or impropriety. *In Re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1309–1310 (7th Cir.1984). However, the right of access is not absolute. *Press–Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 9, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

While there is ample case law regarding the public's and the media's rights to judicial documents in civil matters, there is little reported on the right of access to the court's docketing reports. There is one reported case addressing this issue, where the Eleventh Circuit held that the maintenance of a dual docketing system by the Middle District of Florida was an unconstitutional infringement on the public and press's qualified right of access to criminal

proceedings. *U.S. v. Valenti*, 987 F.2d 708 (11th Cir.1993), *cert. denied sub nom. Times Pub. Co. v. U.S. District Court for Middle District of Florida*, 510 U.S. 907, 114 S.Ct. 289, 126 L.Ed.2d 238 (1993). Until *Valenti*, the clerk maintained a "sealed docket completely hid from public view the occurrence of closed pretrial bench conferences and the filing of in camera pretrial motions." *Id.* at 715. After *Valenti*, the Middle District of Florida changed its docketing procedures in criminal and civil cases to notify the public on the public docket of *in camera* proceedings that had been held, and of sealed documents that had been filed. *U.S. v. McCorkle*, 78 F.Supp.2d 1311, 1314 (M.D.Fla. 1999). The *Valenti* opinion does not address nor offer any guidance to the trial court on the retrospective effect, if any, of its holding. Nor did this court locate any other cases examining the public's right of access to civil case detail where a dual docketing system was maintained.

▆ In the present litigation, plaintiffs assert this right of access to the aforementioned Level 1 and Level 2 cases. If the defendants were to disclose the requested data, they would in effect be altering or reconsidering existing sealing orders previously entered by other judges. Any modification of such an order would neces-

sarily involve balancing the public's right of access to court records and documents against the Level 1 and Level 2 parties' rights to privacy and their confidence in the finality and reliability of the administration of their cases.

The power of one judge to vacate a sealing order duly made by another judge is limited by statute. Conn. Gen.Stat. § 51–164x(a) provides:

> Any person affected by a court order which prohibits any person from attending any session of court, except any session of court conducted pursuant to section 46b–11, 46b–49, 46b–122 or 54–76h or any other provision of the general statutes under which the court is authorized to close proceedings, whether at a pretrial or trial stage, shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order.

Section 46b–11 provides for closed hearing and records in family relations matters [2], § 46b–49 provides for closed hearings on matters involving minor children [3], § 46b–122 provides for closed hearings in juvenile matters [4], and § 54–76h provides for pri-

**2.** Section 46b–11 provides: Any case which is a family relations matter may be heard in chambers or, if a jury case, in a courtroom from which the public and press have been excluded, if the judge hearing the case determines that the welfare of any children involved or the nature of the case so requires. The records and other papers in any family relations matter may be ordered by the court to be kept confidential and not to be open to inspection except upon order of the court or judge thereof for cause shown.

**3.** Section 46b–49 provides: When it considers it necessary in the interests of justice and the persons involved, the court shall, upon the motion of either party or of counsel for any minor children, direct the hearing of any mat-

ter under this chapter and sections 17b–743, 17b–744, 45a–257, 46b–1, 46b–6, 47–14g, 51–348a and 52–362 to be private. The court may exclude all persons except the officers of the court, a court reporter, the parties, their witnesses and their counsel.

**4.** Section 46b–122 provides: All matters which are juvenile matters, as provided in section 46b–121, shall be kept separate and apart from all other business of the Superior Court as far as is practicable, except matters transferred under the provisions of section 46b–127, which matters shall be transferred to the regular criminal docket of the Superior Court. Any judge hearing a juvenile matter may, during such hearing, exclude from the room in which such hearing is held any per-

vate proceedings in youthful offender cases.[5] This court is not aware of any Connecticut statute that would permit defendants in their administrative capacities to set aside an order issued by a trial court judge.

Conn. Gen.Stat. § 51–5a sets forth the duties and powers of the chief court administrator. It provides that the Chief Court Administrator:

(1) Shall be the administrative director of the judicial department and shall be responsible for the efficient operation of the department, the prompt disposition of cases and the prompt and proper administration of judicial business; (2) shall meet periodically at such places and times as he may designate with any judge, judges, or committee of judges, and with the probate court administrator to transact such business as is necessary to insure the efficient administration of the judicial department; (3) may issue such orders, require such reports and appoint other judges to such positions to perform such duties, as he deems necessary to carry out his responsibilities; (4) may assign, reassign and modify assignments of the judges of the superior court to any division or part of the superior court and may order the transfer of actions under sections 51–347a and 51–347b; and (5) may provide for the convening of conferences of the judges of the several courts, or any of

them, and of such members of the bar as he may determine, for the consideration of matters relating to judicial business, the improvement of the judicial system and the effective administration of justice in this state.

(b) The Chief Court Administrator may establish reasonable fees for conducting searches of court records. No federal, state or municipal agency shall be required to pay any such fee.

Conn. Gen.Stat. § 51–1b provides that:

(a) The chief justice of the supreme court shall be the head of the judicial department and shall be responsible for its administration. (b) The chief justice shall appoint a Chief Court Administrator who shall serve at the pleasure of the chief justice.

Neither statute provides for either defendant to vacate sealing orders. In *Pamela B. v. Ment*, 244 Conn. 296, 709 A.2d 1089 (1998), the Connecticut Supreme Court examined the scope of the chief court administrator's duties in a case seeking to compel defendants to remedy the alleged constitutional and statutory violations of certain procedures regarding orders of temporary custody of minor children who are the subjects of neglect petitions. The court recognized the chief court administrator's power to make rules "relating to the management of the internal institutional machinery of the court

son whose presence is, in the court's opinion, not necessary, except that in delinquency proceedings any victim of the delinquent act, the parents or guardian of such victim and any victim advocate appointed pursuant to section 54–221 shall not be excluded unless the judge specifically orders otherwise.

**5.** Section 54–76h provides: All of the proceedings except proceedings on the motion under section 54–76c had under the provisions of sections 54–76b to 54–76n, inclusive, shall be private and shall be conducted in such parts of the courthouse or the building

wherein court is located as shall be separate and apart from the other parts of the court which are then being held for proceedings pertaining to adults charged with crimes. If such defendant is committed while such examination and investigation is pending, before trial, during trial or after judgment and before sentence, those persons in charge of the place of detention shall segregate such defendant, to the extent of their facilities, from defendants over the age of eighteen years charged with crime.

system." *Id.* at 326, 709 A.2d 1089. The chief court administrator cannot "formulate or interfere with rules of practice and procedure that directly control the conduct of particular litigation." *Id.* This court did not locate any other cases examining the scope of the chief justice's administrative power.

In a dissenting opinion, Justice Marshall stated

It is not without significance that most of the provisions of the Bill of Rights are procedural. It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict procedural safeguards is our main assurance that there will be equal justice under law.... And Mr. Justice Frankfurter has said that the history of American freedom is, in no small measure, the history of procedure.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 589–590, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the absence of any enabling statute or any binding case law conferring such authority on either defendant, this court concludes that neither defendant has the authority nor the power to provide the plaintiffs with the relief they seek.

Accordingly, it is hereby ORDERED that defendants' Motions to Dismiss (**Docs. # 10 and # 22**) are granted.

SO ORDERED.